UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE )<br>UNITED STATES OF AMERICA FOR )<br>AN ORDER PURSUANT TO )<br>18 U.S.C. § 3512 )<br>)<br>Request from Argentina for Assistance in a )<br>Criminal Matter: Fraud Investigation )<br>) | ML NO. ____ |

Reference: DOJ REF. # CRM-182-64660

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this ex parte application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Teresita B. Mutton, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute a request for assistance in a criminal matter from Argentina. In support of this application, the United States asserts:

RELEVANT FACTS

1. On July 5, 2018, the Ministry of Justice and Human Rights submitted a request for assistance (Request) to the United States, pursuant to the Treaty Between the Government of the United States of America and the Government of the Republic of Argentina on Mutual Legal Assistance in Criminal Matters, U.S.-Arg., Dec. 4, 1990, S. TREATY DOC. NO. 102-18 (1991) (Treaty). As stated in the Request, the 12th Argentine Prosecutor's Office in

Federal Criminal and Correctional Matters is investigating criminal offenses, specifically, fraud, fraud by a fiduciary, and fraud against the public administration, which occurred between in or about October 2014 and September 2016, in violation of the criminal law of Argentina, namely, Article 172, 173(7), and 174(5) of the Argentine Criminal Code. A copy of the applicable law is included as Attachment A to this application. Under the Treaty, the United States is obligated to render assistance in response to the Request.

2. Argentine authorities are investigating former Chief of Staff of the Army, Lieutenant General Cesar Santos Gerardo del Corazon de Jesus Milani (Milani) and Argentine Military Attaché in the United States of America, Brigadier Juan Rodolfo Brocca (Brocca) for fraud-related offenses pertaining to the administration of public contracts.

3. On or about June 11, 2014, Milani authorized Brocca, through the Argentine Military Attaché's Office, to purchase bridge-related materials from abroad. Shortly after receiving approval, on or about October 28, 2014, the Argentine Military Attaché's Office began advertising public bid No. 35/2014 (Bid 35/2014) for the purchase of approximately 1,500 modular steel panel bridge and related accessories. On or about March 26, 2015, the Argentine Military Attaché's Office awarded Bid 35/2014 to Acrow Corporation of America (Acrow), with Brocca's approval, for the total price of US$1,490,200.00. The Contract with Acrow was subsequently finalized on or about March 6, 2015, and Acrow delivered the steel panel bridge and related accessories to Argentine Military authorities in Buenos Aires on September 8, 2015, using Platinum Moving Services, LLC, located in Gaithersburg, Maryland.

4. On or about October 20, 2016, Argentine authorities began investigating Bid 35/2014 after receiving an anonymous letter revealing Acrow's alleged corrupt business dealings around the world. Over the course of their investigation, Argentine authorities identified four

notable irregularities in the bidding process, which seemed to unfairly benefit Acrow.

5. First, Argentine authorities identified an irregularity with the Military Attaché's Office's qualification of the bridge-related parts and accessories as "specialized." Under Argentine law, a government authority must first establish a "reference price" for the goods or services it seeks to purchase. The reference price is the average market value for a particular good or service. A government authority may only accept a bid that is equal or less than the established reference price. However, if a government authority classifies a good or service as "specialized," it is exempt from the reference price requirement.

6. According to Argentine authorities, the Military Attaché's Office initially claimed the price quoted by Acrow in its bid was the reference price for the bridge parts and accessories it sought. However, given that Acrow was the only company to submit a bid, Argentine authorities questioned the validity of this estimate. Moreover, the Military Attaché's Office was unable to provide any concrete evidence that the bridge parts and accessories it needed were "specialized" and, thus, exempt from the reference price requirement.

7. Second, Argentine authorities identified an irregularity with the Military Attaché's Office's decision pertaining to Acrow's warranty obligations. Under Argentine law, a government authority must require a contracting party to guarantee the fulfillment of the contract through the production of a surety bond or surety insurance, among other things. In order to deviate from this requirement, a government authority must provide concrete evidence as to how the warranty requirement would negatively affect the bidding process.

8. Argentine authorities indicate that the Military Attaché's Office did not require Acrow to provide any warranties promising to fulfill its contractual obligations. Instead, as documented in the "Minutes of Justification" filed with the Argentine Army, the Military

Attaché's Office waived the warranty requirement in order to "make participation easier" and because such a requirement was not the "established general practice and conduct" for the industry from which goods were needed. However, the Military Attaché's Office provided no concrete evidence substantiating its claim.

9. Third, Argentine Authorities identified an irregularity with the Military Attaché's Office's publication of the bid. Argentine government procurement law requires that all national public bids be advertised on the Argentine National Contract Office's webpage for 20 calendar days before the bidding period begins. However, for international public tenders, Argentine law requires that publication be advertised on the United Nations' Development Business's website, as well as in a local publication, such as a newspaper, for a minimum of 40 calendar days. According to Argentine authorities, the Military Attaché's Office did not advertise Bid 35/2014 on the United Nations' Development Business's website. Instead, it advertised Bid 35/2014 in the Washington Post newspaper and sent personal invitations to 10 companies throughout the world, to include three located in the United States, namely U.S. Bridge, Gatorsbridge - Crane Materials International, and Big R Bridge Corporate, on or about October, 28, 2014. However, the bidding process started 20 days later on or about November 18, 2014. Therefore, the Military Attaché's Office violated the publication requirements provided for in Argentine law.

10. Fourth, Argentine authorities indicate that the Military Attaché's Office required unnecessary technical specifications in order to give Acrow an unfair advantage. Argentine public contracting law requires bid specification be drafted to allow equal access to the selection procedure. However, the Military Attaché's Office required "2 sections of an Acrow Modular Steel Bridge" in Bid 35/2014. Such a specification is not only overly specific, but also requires an Acrow product in order to be fulfilled.

11. As a result of the Military Attaché's Office's decisions pertaining to the specifications listed in Bid 35/2014, Acrow was the only company to submit a bid. In fact, U.S. Bridge even submitted a complaint to the Argentine Military claiming that the technical specification listed in Bid 35/2014 could only be fulfilled with a specific product sold on the market, which U.S. Bridge did not carry. Accordingly, Argentine authorities believe Brocca and Milani, through the Military Attaché's Office, intentionally manipulated the public bidding process to favor Acrow, in violation of Argentine law.

12. To further the investigation, authorities in Argentina have asked U.S. authorities to provide business records from Acrow Corporation of America and Platinum Moving Services, LLC pertaining to Bid 35/2014.

## LEGAL BACKGROUND

### The Treaty

13. A treaty constitutes the law of the land. U.S. Const. art. VI, cl.2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (368) (1989) (internal quotation marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

14. The United States and Argentina entered into the Treaty to promote more effective cooperation and assistance between the parties in criminal matters. See Treaty pmbl. The Treaty obligates each party, upon request, to provide assistance to the other in criminal

investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. Article 1. In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests. Article 5 ("The courts of the Requested State shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request"). Article 5(5).[1]

## 18 U.S.C. § 3512

15. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \* \* \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \* \* \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

---

[1] Argentine authorities have not asked U.S. authorities to keep the Request confidential. Accordingly, the United States is not seeking authorization to issue a non-disclosure order, nor is it seeking an order to seal the court file.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

16. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders which are necessary to execute a foreign request.

17. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs, which serves as the "Central Authority" for the United States, has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[3] Upon such a duly authorized application, Section 3512 authorizes a federal judge[4] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were previously executed); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B.

[4] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1) and Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

7

under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)-(b)(1). In addition, a federal judge may prescribe any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. See In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989) (court has discretion in prescribing procedures to be followed in executing foreign request under 28 U.S.C. § 1782); cf. White v. National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (court may issue process necessary to facilitate disposition of matter before it); Fed. R. Crim. P. 57(b).

18. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents or other things to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; (3) take testimony or statements; and (4) take receipt of documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner Subpoena." Any such subpoena or any other order, subject to subsection (d), may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f). A copy of a "Commissioner Subpoena" is included as Attachment B.

## REQUEST FOR ORDER

19. The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute the Request has been "duly authorized" within the

meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," i.e., the Ministry of Justice and Human Rights, the designated Central Authority in Argentina for requests made pursuant to the Treaty, and seeks assistance in the investigation of fraud, fraud by a fiduciary, and fraud against the public administration - criminal offenses in Argentina. Furthermore, the requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of business records, falls squarely within that contemplated by both the Treaty and Section 3512. Finally, this application was properly filed in the District of Columbia.

20. Both Section 3512 and the Treaty authorize the use of compulsory process in the execution of treaty requests comparable or similar to that used in domestic criminal investigations or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a treaty request pursuant to Section 3512 and the applicable treaty, likewise should require no notice other than to the recipients. Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person other than the recipients of the commissioner subpoenas.

21. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Teresita B. Mutton, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently

designated by the Office of International Affairs) as a commissioner and authorizing the undersigned to take the actions necessary, including the issuance of commissioner subpoenas, to obtain the evidence requested in a form consistent with the intended use thereof.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: */s/ Teresita B. Mutton*
Teresita B. Mutton
Trial Attorney
District of Columbia Bar Number 983152
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C. 20530
(202) 305-4243 telephone
Teresita.Mutton@usdoj.gov